UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES G. STAMOS, JR., | No.  2:24-cv-03414-SCR |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the "Act").  The parties have consented to the jurisdiction of a Magistrate Judge for all further proceedings, including the entry of final judgment.  ECF No. 7.  For the reasons that follow, the Court will DENY Plaintiff's motion for summary judgment and GRANT the Commissioner's cross-motion for summary judgment.

## I. PROCEDURAL BACKGROUND

The case has a somewhat complicated procedural history.  Plaintiff previously applied for Social Security benefits, and that claim was denied in October 2018.  Administrative Record

////

////

1

("AR") 95-101.[1]  Plaintiff then applied for SSI on December 30, 2020, alleging disability since November 2009.[2]  AR 254.  The ALJ denied the claim in February 2022.  AR 37-50.  Plaintiff sought judicial review, and the parties agreed to remand the case on August 31, 2023.  AR 692-94.  While that case was pending in federal court, Plaintiff filed a new application for SSI benefits on August 10, 2023.  ECF No. 14 at 5, citing AR 700.  On that application, Plaintiff was found disabled as of August 10, 2023, and the Appeals Council affirmed that decision, but determined that for the period prior to August 10, 2023, further adjudication was required.  AR 700.  On February 14, 2024, the Appeals Council remanded the application being considered here for further consideration of the time period from December 30, 2020 through August 9, 2023.  The ALJ held another hearing on August 1, 2024 (the "2024 hearing") (AR 620-633), a hearing having previously been held on January 5, 2022 (the "2022 hearing") (AR 56-91).  On September 24, 2024, administrative law judge ("ALJ") Vincent Misenti issued a decision finding that Plaintiff was not under a disability from December 30, 2020 to August 9, 2023.  That decision, considering the slightly more than two-and-a-half-year period of December 2020 to August 2023, is now before the Court.

Plaintiff filed this action on December 7, 2024.  ECF No. 1.  The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed.  ECF Nos. 10, 14, & 15.

## II.  FACTUAL BACKGROUND

Plaintiff was born in 1968, and was 52 years old at the time of his SSI application.  AR 254.  Plaintiff testified that he completed twelve years of schooling, but did not receive his high school diploma or GED.  AR 625.  He testified that he was unable to work due to problems with his hip and knee, which lead to difficulty standing and walking, and that he walks with a cane.

---

[1]  The AR is electronically filed at ECF No. 5-15.  References to the AR are to the page number in the lower-right hand corner.  For briefs, the page reference is to the number generated by the CM/ECF header.

[2]  The Commissioner's brief states the alleged onset date was November 2009 (ECF No. 14 at 5), while Plaintiff's brief states October 2014 (ECF No. 10-1 at 3).  Both briefs cite to AR 254, which lists the 2009 date.  Regardless, SSI benefits are only available from the month after the application was filed.  *See* 20 C.F.R. § 416.335.

AR 64.  Plaintiff had no past relevant work.  The ALJ found that Plaintiff had the residual functional capacity to perform light work with additional limitations.  AR 607.  Based on vocational expert testimony from the hearing, the ALJ found that Plaintiff could perform the jobs of Cashier II, Cleaner/Housekeeping, and Sales Attendant.  AR 612.

### III.  LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).  "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).  "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." *Desrosiers v. Secretary of HHS*, 846 F.2d 573, 576 (9th Cir. 1988); *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn*

3

*v. Astrue,* 495 F.3d 625, 630 (9th Cir. 2007); *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 885 (9th Cir. 2006) (quoting *Stout v. Commissioner*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## IV.  RELEVANT LAW

Disability insurance benefits are available for eligible individuals who are "under a disability".  42 U.S.C. § 423(a)(1)(E).  An individual is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

20 C.F.R. §§ 404.1520(a)(4)(i), (b); 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, the claimant is not disabled.

*Id*., §§ 404.1520(a)(4)(ii), (c); 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is disabled.  If not, proceed to step four.

*Id.,* §§ 404.1520(a)(4)(iii), (d); 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

*Id.*, §§ 404.1520(a)(4)(iv), (e), (f); 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Id.*, §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  20 C.F.R. §§ 404.1512(a), 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); *Bowen*, 482 U.S. at 146 n.5.  However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012); *Bowen*, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since December 30, 2020, the application date, through August 9, 2023. (AR 604).
>
> 2. [Step 2] The claimant has the following severe impairments: residual right hip pain status post open reduction internal fixation (ORIF); degenerative disc disease of the lumbar spine; status post small bowel resection; status post inguinal hernia repair; status post ventral hernia repair; and gastroesophageal reflux disease (GERD) (AR 605).
>
> 3. [Step 3] During the relevant time period, the claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (AR 605).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that from December 30, 2020 through August 9, 2023, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), but he was limited to only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. He could not climb ladders or scaffolds.  He could not work around unprotected heights. He must avoid concentrated exposure to moving mechanical parts. In addition, he required the use of a cane for long-distance

5

ambulation of over 100 yards and for ambulation on uneven ground. (AR 607).

5. [Step 4] The claimant has no past relevant work. (AR 611).

6. The claimant was closely approaching advanced age and had a limited education.  (AR 611).

7.  Transferability of job skills was not at issue, because claimant did not have past relevant work.  (AR 612).

8.  [Step 5]  From December 30, 2020 through August 9, 2023, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could perform (20 CFR 416.969 and 416.969a).

9. The claimant has not been under a disability, as defined in the Social Security Act, from December 30, 2020, through August 9, 2023. (AR 613).

## VI.  ANALYSIS

Plaintiff alleges that the ALJ "erred primarily in weighing medical opinions and Plaintiff's subjective complaints." ECF No. 10-1 at 5.  Plaintiff asserts that the "primary issue" presented in the case is Plaintiff's ability to stand and walk. *Id.*  More specifically, Plaintiff argues the ALJ erred in discounting Dr. Sharma's opinion, while relying too heavily on the state agency consultants. *Id.* at 5-7, 13-14.  And in regard to Plaintiff's testimony, Plaintiff contends the ALJ erred in not adequately considering the reasons for perceived lack of treatment. *Id.* at 9-13.  The Commissioner contends the ALJ reasonably considered the medical opinion testimony and appropriately discounted Plaintiff's subjective symptom testimony.  ECF No. 14.

### A.  The ALJ's Decision to Discount Plaintiff's Testimony

The ALJ discounted Plaintiff's testimony regarding the intensity, persistence, and limiting effects of his physical impairments.  AR 607-09.  Evaluating the credibility of a plaintiff's subjective testimony is a two-step process: First the ALJ must "determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the

6

symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (internal citations omitted). Objective medical evidence of the pain or fatigue itself is not required. *Id.* (internal citations omitted).

Second, if the ALJ does not find evidence of malingering, the ALJ may only reject the claimant's testimony by offering "specific, clear and convincing reasons for doing so." *Id.* (internal citations omitted). While an ALJ's credibility finding must be properly supported and sufficiently specific to ensure a reviewing court the ALJ did not "arbitrarily discredit" a claimant's subjective statements, an ALJ is also not "required to believe every allegation" of disability. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In weighing a claimant's credibility, an ALJ may consider, among other things, inconsistencies either in the claimant's testimony or between her testimony and her conduct, claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Id.* at 959. "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work . . . . The standard isn't whether our court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). The clear and convincing standard is "not an easy requirement to meet" and the "most demanding requirement in Social Security cases." *Garrison*, 759 F.3d at 1015 (9th Cir. 2014) (citation omitted).

Plaintiff testified that he was unable to work due to problems with his "right hip, my femur" and that the "joint pops in an out[.]" AR 63-64. He testified he walks with a cane and that sometimes his "knee locks up" and that he has "a lot of pain and discomfort[.]" AR 64. He also testified to abdominal problems, including hernias, and a surgery in which eight inches of his small intestine was removed. AR 64. Plaintiff testified that he could sit for 20 to 30 minutes before needing to stand up, and that he could only stand for a "couple minutes" at a time due to pain. AR 71. He stated he could walk up to 300 yards with his cane, and could only walk three

7

or four feet without it.  AR 72.  Plaintiff also testified that he had a flight of stairs at home, his room was upstairs, and he did not have problems using the stairs.  AR 72.

The ALJ found Plaintiff's testimony concerning the intensity, persistence and limiting effects of his impairments was not entirely consistent with the medical evidence.  AR 608.  The ALJ also discounted Plaintiff's testimony due to the lack of treatment, and as inconsistent with his daily activities.  AR 608-09.  The ALJ found "little recent treatment" for Plaintiff's right hip injury in the record and noted that Plaintiff "refused hip replacement due to concerns about failure and refused additional injections due to side effects and ineffectiveness, but he did not receive other types of conservative treatment, such as physical therapy, during the adjudicative period[.]"  AR 608.  As for complaints of back pain, the ALJ found "virtually no treatment for this condition during the adjudicative period" and "little evidence" of difficulty obtaining treatment, and observed that "recent treatment notes documented virtually no complaints of back pain."  AR 608.  Concerning Plaintiff's allegations of knee problems, the ALJ noted there was "no diagnostic imaging" of Plaintiff's right knee, and the treatment notes documented "virtually no relevant clinical signs[.]"  AR 605.  As for his knee, the ALJ stated: "He received virtually no treatment for this condition during the adjudicative period, and there is little evidence that he had difficulty obtaining treatment as necessary."  AR 605.

Plaintiff argues that the ALJ did not adequately consider the reasons for lack of treatment.  ECF No. 10-1 at 9-13.  Plaintiff contends that the Appeals Council ("AC") in its remand order (AR 698-700) "ordered that the issue of treatment and perceived failure to seek treatment be developed."  The AC wrote that the prior 2022 ALJ decision did not contain an adequate evaluation of the medical source opinions and prior administrative medical findings.  AR 698.  The AC then, in discussing consideration of the opinion of Dr. Sharma, stated:

> In discounting Dr. Sharma's opinion regarding the claimant's ability to stand and walk, the Administrative Law Judge also cited "the claimant's failure to seek treatment for right hip pain or complain of right hip pain to his treatment providers since November 2019" (Decision, page 10). However, the Administrative Law Judge did not consider possible reasons that the claimant may not have sought treatment consistent with the degree of these complaints. Further evaluation of the medical source opinions and prior administrative medical findings is therefore warranted.  AR 699.

Thus, the AC apparently wanted the ALJ to consider the lack of treatment and reasons for it in the context of the medical opinion evidence.  It also appears to have been the focus of the parties that the medical opinion evidence should be reevaluated, as the prior stipulated remand in the District Court stated: "The ALJ will be specifically instructed to re-evaluate the opinion evidence, including the opinion of the consultative examiner, Dr. Sharma, in accordance with the regulations."  AR 693-94.  The Stipulated Remand made no specific mention of the issue of lack of treatment.  AR 693-94.

Plaintiff contends that the ALJ did not consider the reasons for lack of treatment on remand, and that the ALJ did not ask a single question about it at the hearing.  ECF No. 10-1 at 10.  While it is true that the ALJ did not ask such a question, treatment had been discussed extensively at the 2022 hearing.  It is also true that Plaintiff's counsel elicited no testimony about the reasons for lack of treatment at the 2024 hearing.  At the 2024 hearing, in an opening statement, Plaintiff's counsel suggested Plaintiff was not being offered treatment due to the Covid pandemic and because Plaintiff lived in an isolated area.  AR 624-25.  Plaintiff's counsel also referenced earlier briefs he had filed, and the "issue regarding treatment as Mr. Stamos testified at the last hearing."  AR 624.  The ALJ stated that the prior 2022 testimony was part of the record and that he would not ask Plaintiff to "cover old ground" and repeat his testimony.  AR 623.  At the 2024 hearing, the ALJ inquired as to Plaintiff's education, and then stated he would be consulting with the vocational expert ("VE") "unless you have something more to say?"  AR 625.  Plaintiff's counsel stated: "No, I'll leave it at that."  AR 625.  Plaintiff thus had opportunity at the 2024 hearing to develop any issue concerning absence of treatment options, but did not do so.

At the 2022 hearing, the ALJ, in an apparent attempt to focus Plaintiff's testimony stated: "I don't care so much about what the – the referrals and all and I care a whole lot more about what you're intending in terms of treatment."  AR 68.  The ALJ told Plaintiff he wanted to know about the "kinds of treatment you have and what kinds of limitations you have[.]"  AR 68.  He asked Plaintiff a series of questions on the subject.  AR 68-71.  Plaintiff was asked if he had ever had any imaging or treatment on his right knee, and he said no, and added other than ibuprofen. AR 68.  The ALJ asked if Plaintiff had been referred to physical therapy or had a knee brace, and

9

Plaintiff said no.[3]  *Id*.  Plaintiff stated that "several years" prior to 2022, a doctor had tried to give him steroid shots in his knee, and he "refused because I had it done once and it just made me sick."  AR 69.  Plaintiff also testified that he refused hip surgery in 2010.  AR 69.  Plaintiff further testified he was not receiving any treatment for his back, but if it becomes urgent they would do surgery.  AR 70.

A claimant's treatment history is a valid consideration in evaluating subjective symptom testimony.  *See* 20 C.F.R. 404.1529(c)(3); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("The ALJ is permitted to consider lack of treatment in his credibility determination.").  Social Security Ruling ("SSR") 16-3p provides that in evaluating the intensity, persistence, and limiting effects of an individual's symptoms the ALJ will consider a variety of factors including treatment for relief of pain and the "type, dosage, effectiveness, and side effects of any medication[.]"  2017 WL 5180304 at *7-8.  SSR 16-3p further provides that "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record."  *Id.* at *9.  However, the SSR also provides that the ALJ will not rely on lack of treatment "without considering possible reasons [the claimant] may not comply with treatment or seek treatment consistent with the degree of [the claimant's] complaints."  *Id*.

The ALJ clearly considered the lack of treatment, as discussed above.  The ALJ also considered the reasons for it—specifically discussing why Plaintiff did not want hip replacement surgery or injections.  AR 608.  Plaintiff takes issue with the ALJ not specifically discussing reasons that were raised by counsel, but which Plaintiff did not testify about.  Plaintiff did not testify that he could not access care due to Covid or because he lived in a rural area.  The ALJ also implicitly rejected those reasons by pointing out several times that Plaintiff was able to access other medical care in the time period in question and that the "vast majority of the recent

---

[3]  Notably, this is at odds with Plaintiff's testimony in the 2018 hearing where he stated, "I wear a knee brace at all times," and that it was a soft knee brace, and prescribed.  AR 643.

10

treatment records concerned his gastrointestinal disorders." AR 608. The ALJ stated: "[T]here is little evidence that he had difficulty obtaining treatment as necessary. In fact, the recent treatment notes documented virtually no complaints of back pain." AR 608. Thus, the ALJ considered that Plaintiff was receiving treatment in the 2020 to 2023 time period—just was not for his orthopedic conditions involving his back, knee, and hip. This was an appropriate consideration by the ALJ. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453 (9th Cir. 1995) (rejection of claimant's back pain testimony was appropriate because during the time claimant alleged she was unable to afford treatment she had received other medical care and had failed to mention her back pain).

The ALJ's conclusion that Plaintiff's medical records evidence a lack of treatment for his hip, knee, and back problems, while also demonstrating an ability to get care for other conditions is supported by substantial evidence. In September 2019, Plaintiff sought treatment for abdominal pain and history of hernia. AR 481. The musculoskeletal physical exam states: "No pain, trauma, or arthritis." AR 481. Plaintiff sought care again in December 2019 for gastrointestinal (GI) issues. AR 497. In January 2020, Plaintiff sought care for a cough and his past history lists abdominal pain, constipation, and hernia. AR 514-15. On musculoskeletal exam he is "[n]egative for back pain, joint swelling and neck pain." AR 516. In December 2020, he again sought care for GI issues. AR 537. In March 2021, Plaintiff had CT imaging for GI issues. AR 563-64. At an office visit in June 2021, for consult on GI issues, after discussing his history of GI problems the note states "he has not other complaints he uses a cane[.]" AR 70. On physical exam he has "no spinal or paraspinal tenderness[.]" AR 571. The physician's assessment at that visit is that Plaintiff "does not have a recurrent hernia at this time no surgical intervention is indicated[.]" AR 571. Plaintiff then had an office visit for chronic heartburn in September 2021 (AR 589) and additional visits for GI issues in October and December 2021. AR 591, 597. The ALJ appropriately discounted Plaintiff's symptom testimony concerning his back, hip, and knee conditions based on the lack of treatment and Plaintiff's medical records not reflecting these conditions. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (ALJ's inference that claimant's "pain was not as all-disabling as he reported in light of the fact

11

that he did not seek an aggressive treatment program" was permissible reason to discount testimony).

The ALJ also discounted the testimony as inconsistent with Plaintiff's activities of daily living ("ADLs").  In considering the ADLs the ALJ stated: "He admittedly could lift up to 20 pounds … He was independent in personal care, had the ability to drive, could clean his car and do minor repairs or maintenance on it, and was able to perform household chores such as cleaning, vacuuming, sweeping, doing minor repairs, preparing simple meals, taking out trash, doing laundry, blowing leaves, washing the driveway, and shopping for car parts and personal items." AR 608.  The ALJ cited to Plaintiff's own exertion questionnaire and function report for a description of his daily activities.  AR 286-297.  It was reasonable for the ALJ to find Plaintiff's daily activities inconsistent with his claims of disabling impairment. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Even if the claimant experiences some difficulty or pain, [his] daily activities may be grounds for discrediting testimony to the extent they contradict claims of a totally debilitating impairment.") (citation and quotation omitted).  "It is not the court's role to second-guess an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (citation and quotation omitted).  The ALJ could reasonably conclude that Plaintiff's daily activities indicated he was not as limited as he claimed.

The ALJ also discounted Plaintiff's subjective testimony because it was inconsistent with the objective medical evidence.  AR 605 ("with respect to these allegations [concerning the right knee], the undersigned finds that there is a lack of objective evidence to substantiate the existence of a medically determinable impairment"); AR 608 (stating "the treatment notes covering the period since 2020 documented virtually no relevant clinical signs; in fact, he demonstrated normal ranges of motion and normal motor and sensory function in the extremities on January 2, 2020"); AR 609 (discussing objective evidence concerning lumbar spine).  An ALJ must consider the objective medical evidence along with other evidence when evaluating the reliability of symptom testimony.  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); *see also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such

12

testimony.") (emphasis in original).  The ALJ's decision to discount Plaintiff's subjective symptom testimony is supported by substantial evidence.

### B.  The ALJ's Assessment of Dr. Sharma's opinion

Plaintiff's other primary argument is that the ALJ erred in his evaluation of Dr. Sharma's opinion.  ECF No. 10-1 at 5-8.  With respect to medical opinions, consideration of them is governed by the regulations effective in 2017, which changed the framework for evaluation of medical opinion evidence.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  The regulations provide that the ALJ will no longer "give any specific evidentiary weight ... to any medical opinion(s)" but instead must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources and evaluate their persuasiveness. Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b); *see also Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022) ("For claims subject to the new regulations, the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies.  Now an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence.").

The factors for evaluating the persuasiveness of a physician opinion include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements").  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The Ninth Circuit has confirmed that the new regulatory framework eliminates the

"treating physician rule" and displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods*, 32 F.4th at 787. Still, in rejecting any medical opinion as unsupported or inconsistent, an ALJ must provide an explanation supported by substantial evidence. *Id.* In sum, the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Dr. Sharma conducted two consultative exams of Plaintiff, one in 2017 and one in 2021. AR 28-33, 548-551. Plaintiff relies on the standing/walking limitations in the 2021 report. At the 2021 examination, Dr. Sharma noted that Plaintiff walked with a limp, and had brought a cane with him, but could walk across the room without the cane. AR 551. Dr. Sharma assessed that Plaintiff "does not need any assistive device to walk." AR 551. He further assessed that Plaintiff's "ability to stand and walk for more than 2 hours in an 8-hour day is limited due to back pain, and the right hip and knee pain." AR 551. In the 2017 evaluation, Dr. Sharma had concluded that Plaintiff could walk or stand "6 hours per day with normal breaks." AR 33.

The ALJ considered Dr. Sharma's 2021 opinion and concluded "that this opinion understates the claimant's physical capacity and is not persuasive because it is not supported by the adequate musculoskeletal function, normal neurologic function, and adequate ambulation that the claimant exhibited during this consultative examination." AR 611. The ALJ then discussed in detail that he found Dr. Sharma's opinion to be inconsistent with other medical evidence of record, Plaintiff's lack of treatment, and Plaintiff's activities of daily living. AR 611. The ALJ considered Dr. Sharma's opinion, considered the supportability and consistency of Dr. Sharma's opinion, and Plaintiff has not demonstrated error in the ALJ's evaluation.

**C. Other Issues**

Plaintiff briefly raises additional issues. Plaintiff argues the ALJ erred in relying on the state medical consultants. ECF No. 10-1 at 13. Plaintiff contends that the opinions of Drs. Dipsia and Pham "are not deserving of any significant weight". ECF No. 10-1 at 14. Defendant argues

14

that the restrictions found by Drs. Sharma, Dipsia and Pham were similar except for the limitation as to standing and walking.  ECF No. 14 at 11.  The ALJ explained that he found the opinions of Dipsia and Pham were "supported by the claimant's normal ranges of motion and normal motor and sensory function in the extremities documented in the treatment note dated January 2, 2020[.]" AR 610.  The ALJ also found the opinions "supported by the adequate musculoskeletal function, normal neurologic function, and adequate ambulation that the claimant exhibited during the consultative examination conducted in April 2021".  AR 610.  The ALJ further stated that the opinions of Pham and Dipsia were consistent with the lack of treatment and Plaintiff's activities of daily living.  AR 610.  The ALJ explained that although there was a confusing mention of agreement with Dr. Sharma's opinion, the ALJ believed that Dr. Dipsia's opinion was a restriction to light exertion:

> Although Dr. Dipsia confusingly mentioned that Dr. Sharma's opinion, which limited the claimant to essentially sedentary work, was appropriate and consistent with the medical evidence, Dr. Dipsia specifically stated that he was adopting the residual functional capacity assessment from the prior hearing decision dated October 3, 2018, which found that the claimant could perform light exertion. Based on Dr. Dipsia's explicit adoption of the prior hearing decision and his function-by-function inputs on the form, the undersigned believes that Dr. Dipsia clearly intended to restrict the claimant to light exertion, not sedentary exertion.

AR 610 (internal citation omitted).  In the AC's remand order, it noted the ambiguity in Dr. Dipsia's opinion and that the ALJ had not explained how it was "considered and resolved."  AR 698.  The ALJ on remand has now explained, and the Court finds that the ALJ's consideration is supported by substantial evidence and Plaintiff has not demonstrated error.

Plaintiff also argues the RFC failed to account for the standing/walking limitation assessed by Dr. Sharma.  ECF No. 10 at 14-15.  As the Court has found above that the ALJ did not err in finding Dr. Sharma's opinion unpersuasive, there is no error in not including the limitation in the RFC.

Finally, Plaintiff argues that remand should be for an immediate award of benefits.  ECF No. 10-1 at 15.  Given the Court's resolution of the other issues, this issue is moot.

////

15

## VII.  CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's motion for summary judgment (ECF No. 10) is DENIED;

2.  Defendant's cross-motion for summary judgment (ECF No. 14) is GRANTED; and

3.  The Clerk of the Court shall enter judgment in favor of the Commissioner and close this case.

SO ORDERED.

DATED: May 8, 2026.

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE

16